United States District Court
Southern District of Texas
**ENTERED**
February 23, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MY CLEAR VIEW WINDSHIELD REPAIR, INC., *et al*, § § § Plaintiffs, § VS. § § GEICO ADVANTAGE INSURANCE COMPANY, *et al*, § § § Defendants. § | CIVIL ACTION NO. 4:16-CV-02840 |

**OPINION AND ORDER**

Pending before the Court in the above-referenced cause are Defendants' Motion to Dismiss or in the Alternative to Stay or Transfer Venue, Doc. 3, and Plaintiffs' Motion to Remand, Doc. 11. Having considered the parties' motions, Plaintiffs' Complaint, Doc. 1-1 at 2–24, and the relevant law, the Court concludes that it has subject-matter jurisdiction of this action and transfer is appropriate. Therefore, Defendants' Motion to Transfer is granted and Plaintiffs' Motion to Remand is denied.

**I. Background**

On August 5, 2016, Government Employees Insurance Company ("GEICO"), GEICO General Insurance Company ("GEICO General"), GEICO Indemnity Insurance Company ("GEICO Indemnity") and GEICO Casualty Insurance Company ("GEICO Casualty") sued Plaintiffs My Clear View Windshield Repair, Inc. ("My Clear View") and Clear Vision Windshield Repair, LLC ("Clear Vision") in the United States District Court for the Middle District of Florida, Case No. 8:16-cv-02241 (the "Florida Federal Action"). Doc. 3-2. The Florida Federal Action brings Federal RICO and related claims against Plaintiffs My Clear View and Clear Vision, as well as a number of other connected individuals and entities. *See id.* at 6–9.

The core issue in the Florida Federal Action is whether My Clear View and Clear Vision perpetrated a fraudulent scheme against the GEICO entities through the submission of fraudulent claims seeking reimbursement for windshield repair/replacement services allegedly provided to GEICO insureds. Doc. 3-2 at 2. The Florida Federal Action plaintiffs allege that My Clear View and Clear Vision provided financial consideration to the owners and managers of a number of Florida car dealerships so that they could gain access to the premises. *Id.* at 15–35. They then allegedly used that access to obtain and steal insurance information from GEICO insureds while the insureds were having their vehicles serviced at those dealerships. *Id.* My Clear View and Clear Vision then used the insureds' information to submit fraudulent claims for reimbursement to the GEICO plaintiffs. *Id.* To illustrate the breadth of My Clear View and Clear Vision's scheme, the GEICO plaintiffs' complaint details a number of incidents in which these fraudulent activities took place, listing insureds, dealerships, and dates. *See id.*

On August 9, 2016, My Clear View and Clear Vision filed this civil action in the District Court of Harris, County, Texas, Case No. 206 52632 (the "State Court Action"). *See* Doc. 1-1 at 2. In the State Court Action, Plaintiffs sued all of the Florida Federal Action plaintiffs (GEICO, GEICO General, GEICO Indemnity, and GEICO Casualty) and added additional defendants, GEICO Advantage Insurance Company ("GEICO Advantage"), GEICO Choice Insurance Company ("GEICO Choice"), GEICO Secure Insurance Company ("GEICO Secure"), and GEICO County Insurance Company ("GEICO County"), (collectively "Defendants"). Doc. 1-1 at 6. In their Complaint, Plaintiffs state that they developed business relationships with dealerships throughout Texas and sixteen other states, including Florida, to provide windshield repair services to those dealership's customers during service appointments. *Id.* at 5, 10. Plaintiffs aver that Defendants interfered with these relationships, made misrepresentations to

GEICO insureds and dealerships about the manner in which Plaintiffs performed their services, and wrongfully withheld payment for Plaintiffs' services. *Id.* at 10–15. However, Plaintiffs do not name any Texas insureds, dealerships, or dealership managers by name in their Complaint. *See id.*

On September 21, 2016, Defendants filed their Notice of Removal. Doc. 1. Therein, Defendants argued that GEICO County was improperly joined to the State Court Action for the purpose of defeating Defendants removal rights. *Id.* ¶ 22. Soon after filing their Notice of Removal, Defendants filed their pending Motion to Dismiss or in the Alternative to Stay or Transfer Venue. Doc. 3. Plaintiffs did not respond to Defendants' Motion. Instead, they filed their own pending Motion to Remand two months later. Doc. 11. Defendants likewise failed to respond to Plaintiffs' Motion to Remand. Both motions are now ripe for adjudication.

## II. Motion to Remand: Improper Joinder

Plaintiffs' base their Motion to Remand on the argument that the State Court Action was not subject to removal because Defendant GEICO County is a Texas citizen and was properly joined as a defendant to the litigation. *Id.* at 3. Defendants argue that Plaintiffs joined GEICO County specifically to thwart Defendants' removal rights and avoid having this case transferred to Florida for adjudication alongside the related Florida Federal Action, which they contend involves the same issues and parties. Docs. 1 at 22, 27; 3 at 30–31.

If Plaintiffs are correct, this Court lacks subject-matter jurisdiction and must remand. *See Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (stating that a defendant may not remove a case to federal court on diversity-jurisdiction grounds if an in-state defendant is properly joined). If Defendants are correct, because the remaining parties are diverse, the district court has original subject-matter jurisdiction over Plaintiffs' state law claims and the exercise of

that jurisdiction is mandatory. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 250 (5th Cir. 2011). Accordingly, the Court must first address the question of improper joinder raised by Defendants' Notice of Removal and Plaintiffs' Motion to Remand.

### a. Legal Standard

The federal removal statute allows for the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Although suits arising under federal law are removable without regard to the citizenship of the parties, diversity suits are removable only if the prerequisites of § 1332(a) are met and none of the "parties in interest *properly joined* and served as defendants is a citizen of the State in which such action is brought." *Id.* § 1441(b) (emphasis added). Thus, a case may be removed despite the presence of an in-state defendant if that defendant was improperly joined for the purpose of hindering removal. *Smallwood*, 385 F.3d at 572–73.

"A defendant is improperly joined if the moving party establishes that (1) the plaintiff *has* stated a claim against a diverse defendant that he fraudulently alleges is nondiverse, or (2) the plaintiff *has not* stated a claim against a defendant that he properly alleges is nondiverse." *Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016) (citing *Smallwood*, 385 F.3d 573). The test for fraudulent joinder under the second prong "is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573. One way to resolve this issue is to "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* (citations

omitted). Nevertheless, "the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined." *Id*. Accordingly, "the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Id.*

### b. Analysis

Plaintiffs bring ten causes of action against Defendants: (1) defamation; (2) slander per se; (3) business disparagement; (4) violations of Section 541.054 of the Texas Insurance Code; (5) other violations of Chapter 541 of the Texas Insurance Code; (6) tortious interference with contract; (7) tortious interference with prospective business relations; (8) civil conspiracy; (9) negligent misrepresentation; and (10) negligence per se. Doc. 1-1 at 11–19. Looking to the allegations of the complaint, the Court finds that there is no reasonable basis for Plaintiffs to recover against GEICO County.

#### i. *Defamation, Slander Per Se, and Business Disparagement Claims*

To state a defamation claim under Texas law, Plaintiffs must plead facts showing that GEICO County "(1) published a statement; (2) that was defamatory concerning [Plaintiffs]; (3) while acting with negligence regarding the truth of the statement." *Copeland v. State Farm Ins. Co.*, 15-10921, 2016 WL 4010441, at *2 (5th Cir. July 26, 2016) (per curiam) (unpublished) (quoting *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)) (internal quotation marks omitted). With regard to the first element, Plaintiffs must also identify the alleged defamatory statement and the speaker. *Ameen v. Merck & Co., Inc.*, 226 Fed. App'x 363, 2007 WL 1026412, at *5 (5th Cir. 2007) (per curiam) (unpublished). "For a defamatory oral statement to constitute slander per se, it must fall within one of four categories: (1) imputation of a crime, (2) imputation of a loathsome disease, (3) injury to a person's office, business, profession, or calling, and (4) imputation of sexual misconduct." *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150,

1161 (5th Cir. 2006) (quoting *Gray v. HEB Food Store No. 4*, 941 S.W.2d 327, 329 (Tex. App.—Corpus Christi 1997, writ denied)) (internal quotation marks omitted).

"A business disparagement claim is similar in many respects to a defamation action." *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987)). "To establish a business disparagement claim under Texas law, Plaintiffs must show that (1) Defendants published false and disparaging information about Plaintiffs, with malice, (3) without privilege, and (4) that resulted in special damages to the plaintiff. *LED Sign Co., LLC v. Hwee*, CIV.A. H-08-1463, 2008 WL 5114957, at *9 (S.D. Tex. Dec. 3, 2008) (quoting *Hurlbut*, 749 S.W.2d at 766).

Here, Plaintiffs have not identified a single specific statement allegedly made by GEICO County. Rather, Plaintiffs merely broadly assert that Defendants as a whole defamed, slandered, and disparaged Plaintiffs at an unspecified time, in an unspecified location, to unspecified individuals and businesses. Thus, their claims against GEICO County for defamation, slander per se, and business disparagement fail the Rule 12(b)(6)-like analysis for proper joinder.

### ii. Texas Insurance Code Claims

Despite the Texas Insurance Code's use of broad statutory language in its definition of "person," which seems to give standing to "any person," Texas courts have severely limited standing to sue under Section 541.151. *In re Burzynski*, 989 F.2d 733, 740 (5th Cir. 1993). Indeed, there are only three recognized situations in which courts have found that a plaintiff has standing to sue under the Texas Insurance Code: the plaintiff (1) is a "person" engaged in the business of insurance; (2) is in privity of contract with the insurer on an insurance policy or an intended beneficiary of an insurance policy; or (3) relied on misrepresentations of coverage. *Id.* at 740–41. *See also Chaffin v. Transamerica Ins. Co.*, 731 S.W.2d 728, 731 (Tex. App.—

Houston [14th Dist.] 1987, writ ref'd n.r.e.); *Hermann Hosp. v. Nat'l Standard Ins. Co.*, 776 S.W.2d 249, 251–52 (Tex. App.—Houston [1st Dist.] 1989, writ denied). Plaintiffs' Insurance code claims fail because they make no allegations in their Complaint that they satisfy any of these requirements with respect to GEICO County.

### iii. Tortious Interference Claims

Tortious interference with contract and tortious interference with prospective business relations are separate causes of action. *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 716–21, 725, 727 (Tex. 2001). To establish tortious interference with an existing contract, a plaintiff must show: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) (citing *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)); *see also Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 489 (5th Cir. 2008) (same). The elements of a claim for interference with prospective relations are: "(1) a reasonable probability that the parties would have entered into a contractual relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference." *Annamalai v. News Corp Star US, LLC*, CIV.A. H-13-1965, 2013 WL 5308290, at *3 (S.D. Tex. Sept. 19, 2013) (citation and internal quotation marks omitted). The plaintiff is required to plead that he had either a business relationship that had not yet been reduced to a written contract or a continuing business relationship. *See Faucette v. Chantos*, 322 S.W.3d 901,

915 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

In this case, Plaintiffs have failed to identify a single contract or specific business relationship that was lost because of Defendants' actions. Plaintiffs also fail to plead that GEICO County had actual knowledge of the existence of any contract as required to show willful and intentional interference. Accordingly, Plaintiffs' allegations are grossly inadequate under a Rule 12(b)(6)-like analysis.

### iv. Civil Conspiracy

"To establish a claim for civil conspiracy in Texas, a plaintiff must show: '(1) two or more persons; (2) an objective to be accomplished; (3) a meeting of the minds on the objective; (4) one or more unlawful, overt acts; and (5) proximate damages.'" *LED Sign Co., LLC*, 2008 WL 5114957, at *7 (quoting *Duzich v. Advantage Fin. Corp.*, 395 F.3d 527, 530 (5th Cir. 2004)). Because civil conspiracy is a derivative tort under Texas law, "[i]f a plaintiff fails to state a separate underlying claim on which the court may grant relief, then a claim for civil conspiracy necessarily fails." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007) (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)). Therefore, whether a plaintiff has stated a claim for civil conspiracy "rises and falls on whether he stated a claim on an underlying tort." *Id.* at 640.

Here, Plaintiffs fail to identify an agreement by Defendants to act against Plaintiffs. More importantly, however, because Plaintiffs' underlying claims for tortious interference fail, their civil conspiracy claim must also fail.

### v. Negligent Misrepresentation

"To prove negligent misrepresentation, a plaintiff must show that: '(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a

pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.'" *Smith v. JPMorgan Chase Bank, N.A.*, 519 Fed. App'x 861, 865 (5th Cir. 2013) (unpublished) (citing *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

In this case, Plaintiffs fail to identify what representations were made, who made them, who they were made to, and when and where they were made. Plaintiffs also fail to allege what provisions of the GEICO insureds policies were misrepresented. Nor do Plaintiffs allege any specific facts to support their conclusory allegations that they relied on Defendants' misrepresentations and suffered damages as a result. As a result, Plaintiffs' negligent misrepresentation also fails.

### vi. Negligence per se

Negligence per se is a common law doctrine whereby the courts establish the duty of care owed to third parties by reference to "a penal statute rather than on the reasonably prudent person test used in pure negligence claims." *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997) (citations omitted). A violation of a non-penal code statute does not establish a negligence per se claim. *Ridgecrest Retirement & Healthcare v. Urban*, 135 S.W.3d 757, 762 (Tex. App.—Hous. [1st Dist.] 2004, pet. denied). "A penal statute is one that defines a criminal offense and specifies a corresponding fine, penalty or punishment." *Pack v. Crossroads, Inc.*, 53 S.W.3d 492, 509–10 (Tex. App.—Ft. Worth 2001, pet. denied) (citing Black's law Dictionary 1421 (7th ed. 1999)).

The Texas Insurance Code section on which Plaintiffs rely for their negligence per se

claim is not penal in nature. *See* Tex. Ins. Code § 1952.301.[1] Therefore, it cannot serve as the basis of a negligence per se claim. Plaintiffs' negligence per se claim fails.

Because none of Plaintiffs' allegations against GEICO County can survive a Rule 12(b)(6)–type analysis, GEICO County is not properly joined. Consequently, Plaintiffs' Motion to Remand is denied and GEICO County must be dismissed without prejudice. *See Int'l Energy Ventures Mgmt., LLC*, 818 F.3d at 209 (upholding district court's denial of motion to remand and noting that "[w]hen, as here, a court determines that a nondiverse party has been improperly joined to defeat diversity, that party must be dismissed without prejudice.").

### III. Motion to Dismiss, Stay, or Transfer: First to File

With GEICO County's dismissal there is complete diversity and no in-state defendant. As a result, the Court has subject-matter jurisdiction over the matter and may proceed to address Defendants' Motion.

---

[1] That provision states in full:

> (a) Except as provided by rules adopted by the commissioner, under an automobile insurance policy that is delivered, issued for delivery, or renewed in this state, an insurer may not directly or indirectly limit the insurer's coverage under a policy covering damage to a motor vehicle by:
>
> (1) specifying the brand, type, kind, age, vendor, supplier, or condition of parts or products that may be used to repair the vehicle; or
>
> (2) limiting the beneficiary of the policy from selecting a repair person or facility to repair damage to the vehicle.
>
> (b) In settling a liability claim by a third party against an insured for property damage claimed by the third party, an insurer may not require the third-party claimant to have repairs made by a particular repair person or facility or to use a particular brand, type, kind, age, vendor, supplier, or condition of parts or products.

Tex. Ins. Code § 1952.301.

### a. Legal Standard

In order "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result," federal district courts must "exercise care to avoid interference with each other's affairs." *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985) (citations omitted). To this end, federal courts apply the first-to-file rule when related cases are pending before two federal courts. *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). In these circumstances, the rule provides that "'the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap.'" *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 677–78 (5th Cir. 2011) (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999)). The court in the second filed action may instead "dismiss the case, stay the case, or transfer the case to the court in the first filed action." *Dxp Enters., Inc. v. Hill*, 4:15-CV-3471, 2016 WL 4159756, at *3 (S.D. Tex. Aug. 3, 2016) (quoting *McGrew v. Quinn's Rental Servs. (USA), LLC*, No. CV H-16-543, 2016 WL 3974836, at *1 (S.D. Tex. July 25, 2016)).

Importantly, the first-to-file rule does not require that cases be identical, only that there be "substantial overlap." *Save Power Ltd.*, 121 F.3d at 950. "'Substantial overlap' is not 'complete overlap;' '[c]omplete identity of parties and issues need not be shown to invoke the first-to-file rule.'" *Dxp Enters., Inc.*, 2016 WL 4159756, at *2 (quoting *McGrew*, 2016 WL 3974836, at *1). In deciding if a substantial overlap exists, courts examine factors such as whether the core issue is the same and whether much of the proof adduced would be identical. *Sweet Little Mexico Corp.*, 665 F.3d at 678 (citing *W. Gulf Maritime Ass'n*, 751 F.2d 721, 730 (5th Cir. 1985); *Mann Mfg., Inc. v. Hortex Inc.*, 439 F.2d 403, 407 (5th Cir. 1971)). "'Where the

overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute.'" *Save Power Ltd.*, 121 F.3d at 950–51 (quoting *TPM Holdings, Inc. v. Intra–Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996) (per curiam)).

### b. Analysis

The Court is of the opinion that there is substantial overlap between the State Court Action and the Florida Federal Action. As Plaintiffs admit, they conduct business in seventeen states, including Texas and Florida. Doc. 1-1 at 9. Although Plaintiffs' Complaint purports to focus its claims on Defendants' actions in Texas, the core issue in both suits is the same: the validity of Plaintiffs' services to GEICO insureds during the insureds' visits to dealerships that Plaintiffs contracted with. As such, as Defendants' point out, Plaintiffs' claims in the State Court Action are more appropriately counterclaims or affirmative defenses to the Florida Federal Action. *See* Doc. 3 at 31. Accordingly, this Court grants Defendants' Motion to Transfer.

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Defendants' Motion to Dismiss or in the Alternative to Stay or Transfer Venue, Doc. 3, is **GRANTED** and Plaintiffs' Motion to Remand, Doc. 11, is **DENIED**. Accordingly, it is further

**ORDERED** that Defendant GEICO County is **DISMISSED WITHOUT PREJUDICE** and this case is **TRANSFERRED** to the United States District Court for the Middle District of Florida.

SIGNED at Houston, Texas, this 14th day of February, 2017.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE